**Matthew GOLDBERG, et al., Appellants–Defendants,**

v.

**Angela K. FARNO, on behalf of herself and others similarly situated, Appellees–Plaintiffs,**

**Matthew Goldberg, et al., Appellants– Defendants,**

v.

**Fred Meyer, Jr., et al., Appellees– Plaintiffs.**

No. 41A01–1007–MF–348.

Court of Appeals of Indiana.

Sept. 26, 2011.

Thomas W. Farlow, Darren A. Craig, Michele Lorbieski Anderson, Frost Brown Todd LLC, Indianapolis, IN, Attorneys for Appellants Matthew Goldberg and Indiana Investment Corporation, LLC.

Irwin B. Levin, Richard E. Shevitz, Vess A. Miller, Lynn A. Toops, Cohen & Malad, LLP, Indianapolis, IN, Attorneys for Appellee Angela K. Farno.

Fred R. Biesecker, Donald M. Snemis, Brian J. Paul, Ice Miller LLP, Indianapolis, IN, Attorneys for Appellee Forest Lawn Memory Gardens, Inc.

## OPINION

CRONE, Judge.

### Case Summary

Appellants Matthew Goldberg and his closely held company, Indiana Investment Corporation, LLC ("Indiana Investment") (collectively, "Goldberg"), were named as defendants in a putative class action lawsuit filed by appellee Angela K. Farno against Ansure Mortuaries of Indiana, LLC ("Ansure"), and others regarding the alleged looting of cemetery trust funds. Farno filed a motion for certification of a litigation class of plaintiffs who all share claims based on the alleged looting of cemetery trusts that had been funded with proceeds from their purchases of pre-need burial services and merchandise pursuant to Indiana law. The trial court denied Farno's motion, concluding that a class action was "not superior to other available methods for the fair and efficient adjudication of the issues in controversy," as would be required for class certification under Indiana Trial Rule 23. Farno requested and received a stay of the proceedings pending an interlocutory appeal from that ruling, which was taken pursuant to Indiana Appellate Rule 14.

Farno then asked the trial court to lift the stay so that she could seek preliminary approval of a class action settlement agreement that she had reached with various defendants, including appellee Forest Lawn Memory Gardens, Inc. ("Forest Lawn"). She also asked the trial court to grant preliminary approval of the settlement agreement and to certify the plaintiff class for settlement purposes, stating that the settling defendants had stipulated for settlement purposes that the "superiority" requirement of Trial Rule 23 was met. Over Goldberg's objection, the trial court entered an order granting preliminary approval of the settlement agreement and certifying the plaintiff class for settlement purposes.

In this interlocutory appeal from that order, Goldberg contends that the trial court did not have jurisdiction to certify the settlement class while the court's prior ruling on the litigation class was being appealed. Goldberg also contends that the trial court's certification of the settlement class was improper, claiming that Farno presented no additional evidence to support certification of an identical plaintiff class for settlement purposes. In response, Farno and Forest Lawn argue that Goldberg has no standing to challenge the settlement because he has not suffered plain legal prejudice. We agree and therefore affirm the trial court.

### Facts and Procedural History[1]

A detailed recitation of the background facts may be found in the companion case of *Angela Farno v. Ansure Mortuaries of Indiana, LLC,* 953 N.E.2d 1253 (Ind.Ct. App.2011). For purposes of this opinion, we summarize those facts as follows:

In December 2004, the Meyer family sold its mortuary business, including four Indiana cemeteries, to Robert Nelms for approximately $27,000,000. Half this amount was paid in cash at closing, and the other half was financed with promissory notes secured by real estate mortgages on property owned by the Meyers. It is alleged that Nelms and others, including a vice president at Smith Barney, then illegally transferred millions of dollars out of the cemeteries' trust accounts. The trust accounts had been funded with proceeds from customer purchases of burial spaces with perpetual care services and/or purchases of pre-need burial services and merchandise, pursuant to Indiana law.

Forethought Federal Savings Bank ("Forethought") was trustee of the accounts when Nelms purchased the cemeteries. It is alleged that Nelms instructed Forethought to transfer the trust funds to Community Trust & Investment Company, Inc. ("Community Trust"), which then disbursed the funds to Nelms. Nelms directed Indiana Investment, which was owned by Nelms and Goldberg, to issue worthless debentures to the trust accounts held at Community Trust in order to conceal the alleged misappropriation of the trust funds. Some of the funds were used to repay a bridge loan that Craig Bush had made to Nelms for the cash payment to the Meyers, and some were deposited in Nelms's account at Smith Barney.

In early January 2008, the Meyers sued Nelms's various business entities, including Ansure, which had purchased their mortuary business, to enforce the promissory notes and foreclose the mortgages ("the Meyers' Action"). The Meyers alleged that Nelms's misappropriation of the trust assets had damaged the security for the mortgages and left the cemetery trusts underfunded and unable to meet the obli-

---

**1.** We heard oral argument on August 25, 2011, in the Indiana Supreme Court courtroom. We thank counsel for their presentations.

gations for which the trusts had been established.

In the middle of January 2008, Indiana Securities Commissioner Chris Naylor ("the Securities Commissioner") intervened in the Meyers' Action and filed a complaint for restitution and injunctive relief against Nelms, Ansure, and several other defendants ("the Securities Commissioner's Action"). The Securities Commissioner asked the court to freeze the defendants' assets and to appoint a receiver to identify and take control of the misappropriated trust assets. Shortly thereafter, the court appointed Lynette Gray as a receiver ("the Receiver") to take control of Ansure and its subsidiaries and to "marshal and account for all trust fund assets."

Near the end of January 2008, William Fishback filed a four-count putative class action complaint against several entities allegedly involved in the misappropriation of the trust funds, including Smith Barney, to recover damages for customers who had paid for perpetual care services at the Indiana cemeteries purchased by Nelms. Fishback had pre-paid for a mausoleum space with perpetual care services at Forest Lawn Memory Gardens cemetery ("Forest Lawn Cemetery") in Greenwood prior to its acquisition by Ansure. Forest Lawn Cemetery was owned by Forest Lawn, a wholly-owned subsidiary of Ansure. Fishback requested treble and punitive damages and attorney's fees for violations of Indiana's racketeering laws and breaches of fiduciary duty and contract.

At the end of June 2008, Angela Farno was added as a plaintiff to the class action. Farno had pre-paid for a mausoleum space with perpetual care services and also had pre-paid for a casket and entombment services at Forest Lawn Cemetery prior to its acquisition by Ansure. The Meyers, Nelms, Ansure, the Receiver, Forethought, Community Trust, Bush, Indiana Investment, Goldberg, Forest Lawn, and others were named as additional defendants. As amended, the class action complaint ("Farno's Complaint") alleged eleven counts, including violations of Indiana statutes governing cemetery trust accounts, claims arising under Indiana's Deceptive Consumer Practices Act and Crime Victims Relief Act, and claims for civil conspiracy, unjust enrichment, and negligence. Farno's Complaint also requested treble and punitive damages plus attorney's fees.

In August 2008, the class action defendants moved to dismiss Farno's Complaint for failure to state a claim. In November 2008, the Receiver filed a nine-count complaint against Nelms, the Meyers, Community Trust, Goldberg, and other defendants, which recited many of the same facts alleged in Farno's Complaint, asserted many similar claims, and requested actual and punitive damages plus attorney's fees ("the Receiver's Action").

In December 2008, the trial court dismissed the class action claims regarding the misappropriation of the trust funds for perpetual care services and upheld most of the remaining claims, including those relating to the misappropriation of the trust funds for pre-need burial services and merchandise. Fishback was dismissed as a representative plaintiff and Farno was listed as the only named plaintiff. In June 2009, the trial court consolidated the class action with the Meyers' Action, the Securities Commissioner's Action, and the Receiver's Action for trial purposes.

In August 2009, pursuant to Indiana Trial Rule 23,[2] Farno filed a motion for certi-

---

**2.** Trial Rule 23 reads in pertinent part as follows:

**(A) Prerequisites to a class action.** One or more members of a class may sue or be

fication of a plaintiff class comprising "[a]ll persons in the State of Indiana who purchased pre-paid burial services or merchandise" from the four aforementioned Indiana cemeteries prior to December 30, 2004. Appellants' App. at 495. On January 22, 2010, the trial court issued an order denying Farno's motion for class certification on the basis that a class action was not "superior to other available methods for the fair and efficient adjudication of the controversy" pursuant to Trial Rule 23(B)(3).

On January 26, 2010, Farno filed a motion to stay proceedings pending an appeal, which the trial court granted that same day. On February 22, 2010, pursuant to Indiana Appellate Rule 14(C),[3] Farno filed with this Court a motion to accept jurisdiction of an interlocutory appeal of the trial court's order denying class certification, which was granted on April 12, 2010.

Also in January 2010, StoneMor agreed to acquire Ansure's mortuary businesses, including Forest Lawn.[4] StoneMor agreed

---

sued as representative parties on behalf of all only if:
 (1) the class is so numerous that joinder of all members is impracticable;
 (2) there are questions of law or fact common to the class;
 (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
 (4) the representative parties will fairly and adequately protect the interests of the class.
**(B) Class actions maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:
 (1) the prosecution of separate actions by or against individual members of the class would create a risk of:
 (a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
 (b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
 (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
 (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and

that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:
 (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
 (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
 (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
 (d) the difficulties likely to be encountered in the management of a class action.

3. Indiana Appellate Rule 14(C) provides in pertinent part that "[t]he Court of Appeals, in its discretion, may accept jurisdiction over an appeal from an interlocutory order granting or denying class action certification under Ind. Trial Rule 23."

4. In its appellee's brief, Forest Lawn says,

 Unless otherwise indicated, "StoneMor" refers to StoneMor Operating, LLC, StoneMor Indiana, LLC, StoneMor Indiana Subsidiary, LLC, Ohio Cemetery Holdings, Inc., Chapel Hill Funeral Home, Inc., Chapel Hill Associates, Inc., Covington Memorial Funeral Home, Inc., Covington Memorial Gardens, Inc., Forest Lawn Memorial Chapel, Inc., and Forest Lawn Memory Gardens, Inc. In this particular instance, the acquiring companies were StoneMor Operating, LLC, StoneMor Indiana, LLC, StoneMor Indiana Subsidiary, LLC, and

to assume the businesses' obligations to maintain the cemeteries, honor all pre-need contracts, and advance nearly $15,000,000 to cemetery trusts established by StoneMor for the purpose of restoring liquidity. Additionally, the Receiver and the Meyers agreed to assign all their claims and causes of action to StoneMor. On April 29, 2010, the trial court approved the sale of the Ansure businesses to Stone-Mor, approved the appointment of Independence Trust as trustee of the StoneMor trusts, and authorized StoneMor and Independence Trust to pursue the Receiver's claims. StoneMor closed on the transaction on June 21, 2010.[5]

On June 18, 2010, Farno filed motions requesting that the trial court lift the stay so that she could seek preliminary approval of a class action settlement agreement that she had reached with various defendants including Forest Lawn, Ansure, the Receiver, Nelms, and the Meyers; that the court grant preliminary approval of the settlement agreement and certify the same plaintiff class for purposes of the settlement; and that the court set a hearing on her motions for June 22, 2010.

At that hearing, Farno's counsel explained that the settling defendants had "stipulated for purposes of settlement that the superiority requirement is met" with respect to class certification under Trial Rule 23(B)(3). Tr. at 443. Goldberg and Indiana Investment were the only non-settling defendants to object. Goldberg's counsel stated,

> [T]o the extent that [Farno's counsel] explained that the plaintiffs were seeking an order certifying the class for the purposes of a settlement and that claims asserted by the non-parties to the settlement will proceed and to the extent that my clients may be prejudiced by certification of the class, an issue that is currently on appeal then we would object. We don't agree that the prerequisite for class certification have [sic] been met and my client should not be bound by the terms of the proposed settlement with respect to class issues.

*Id.* at 447. Farno's counsel asserted that nothing in the settlement agreement would affect Goldberg's rights and that, as a non-settling defendant, Goldberg did not have standing to object. When the trial court asked if Goldberg's counsel if she had any "further prejudice to cite," she replied, "Just what I have already stated." *Id.* at 448.

On June 22, 2010, the trial court issued an order granting preliminary approval to the class action settlement agreement that reads in pertinent part as follows:

> 10. Settlement Class Counsel has engaged in extensive discovery, and the "Settlement Agreement" sets forth a number of benefits that it provides for the class members, including:

Ohio Cemetery Holdings, Inc. The ultimate parent of all these companies is StoneMor Partners, L.P.
Forest Lawn's Br. at 3–4 n. 1.

**5.** Forest Lawn says,
 As a result of the StoneMor acquisition, StoneMor now owns the stock of [Forest Lawn].... Forest Lawn remains a defendant in the *Farno* action and is therefore a party to this appeal under Ind. Appellate Rule 17(A). Forest Lawn is also a party to the proposed partial class settlement agree-

ment that is the subject of this interlocutory appeal.... Forest Lawn is also a plaintiff in the related case now captioned *StoneMor Operating LLC, et al. v. Smith Barney, et al.,* Case No. 41C01–0801–MF–00001, which has been consolidated with the *Farno* case for all purposes, including trial.
Forest Lawn's Br. at 4 (citations to appendices omitted); *see also* Ind. Appellate Rule 17(A) ("A party of record in the trial court or Administrative Agency shall be a party on appeal.").

A. A settlement amount of $10,351,000 to be advanced into the Trusts (Hereinafter: "Trust Settlement Amount") by StoneMor in connection with the Closing of the sale of certain stock and assets of Ansure (Hereinafter: "the Sale"), for the benefit of the Settlement Class members;

B. A reduction in the amounts claimed by the Meyer Family Parties and Tom Meyer to be owed to them by Ansure and a deferment of the payment of those amounts in order to facilitate payment of the Trust Settlement Amount for the benefit of the Settlement Class; and

C. Robert Nelms's consent to the Sale and his release of certain indemnification claims, which will facilitate payment of the Trust Settlement Account for the benefit of the Settlement Class.

11. In exchange for the benefits to the Settlement Class, the Settlement Class will provide releases to the Settling Defendants, including the Receiver, under the terms set forth in the "Settlement Agreement".

12. The "Settlement Agreement" does not exclude any claims brought against the Settling Defendants, and was reached after extensive discovery.

13. Class compensation was negotiated before any attorney fees to Settlement Class Counsel were negotiated.

14. No objection to [Farno's motion] has been filed with the Court.

15. Only two (2) parties expressed any objection to the motion during the hearing: Matthew Goldberg and Indiana Investment Corporation. Those objections are overruled as these parties have failed to articulate any reason that the Court's prelimi-nary approval of the "Settlement Agreement" would prejudice their position.

. . . .

17. Therefore, [Farno's] "Motion for Preliminary Approval of Class Action Settlement Agreement" is **GRANTED.**

. . . .

19. For the purposes of considering the proposed "Settlement Agreement", the Court **FINDS** the requirements of Rule 23(A) are satisfied. . . .

20. For the purposes of considering the proposed "Settlement Agreement", the Court **FINDS** that the requirements of Rule 23(B)(3) are satisfied in that the claims of the Class Representative and class members arise from a common nucleus of operative facts and that common legal and factual issues predominate.

21. For the purposes of considering the proposed "Settlement Agreement", certifying a settlement class provides a superior mechanism to other available methods for the fair and efficient adjudication of the controversy because it resolves the claims of the Settlement Class against the Settling Defendants.

22. For the purposes of the "Settlement Agreement", the Court hereby **CERTIFIES** the following Settlement Class:

All persons in the State of Indiana who purchased pre-paid burial services or merchandise (other than with an insurance contract) before December 30, 2004 from the following Indiana cemeteries:

- Chapel Hill Memorial Gardens
- Covington Memorial Gardens
- Forest Lawn Memory Gardens
- Lincoln Memory Gardens

and who have not transferred the pre-paid contract to a non-listed cemetery or received the pre-paid services and merchandise.

. . . .

24. The Court hereby **APPROVES** the proposed forms of notice and proposed method for dissemination of notice to Settlement Class Members (direct mail) provided in the "Settlement Agreement". . . .

25. Not later than thirty (30) days from the date of the Closing, [StoneMor] shall cause the Mailed Notice set forth in the "Settlement Agreement" [ ] to be mailed to the Settlement Class Members at their last known addresses based on the records of the Ansure companies.

. . . .

27. The Court hereby **SCHEDULES** the Final Approval Hearing at the date and time for the previously schedule[d] September Status/Motions Hearing in these matters: on the 28th day of September, 2010 at 9:30 a.m. This hearing shall be for the purpose of determining if the "Settlement Agreement" is fair, reasonable, and adequate, and whether final approval should be given to, and final judgment

entered upon, the "Settlement Agreement" dismissing and releasing the claims as provided in the "Settlement Agreement".

Appellants' App. at 213–17.

On July 22, 2010, pursuant to Indiana Appellate Rule 14(B),[6] Goldberg filed a motion requesting this Court to accept jurisdiction of an interlocutory appeal, which was granted over Farno's objection on September 7, 2010. On September 15, 2010, Farno filed a motion to dismiss Goldberg's appeal. On October 22, 2010, the motions panel of this Court denied Farno's motion to dismiss.

### Discussion and Decision

Goldberg contends that the trial court's order should be reversed because the court lacked jurisdiction to certify the settlement class while the issue of class certification was pending on appeal.[7] Goldberg also contends that the order should be reversed because "Farno did not provide the trial court with any additional evidence to support certification of the same class for the purposes of settlement." Appellants' Br. at 9.

In her appellee's brief, Farno renews the argument that she made in her motion to dismiss Goldberg's appeal and in her

**6.** Appellate Rule 14(B) governs discretionary interlocutory appeals in general ("An appeal may be taken from other interlocutory orders if the trial court certifies its order and the Court of Appeals accepts jurisdiction over the appeal.").

**7.** Goldberg does not specify the type of "jurisdiction" to which he refers. In *K.S. v. State*, 849 N.E.2d 538 (Ind.2006), our supreme court explained that

 Indiana trial courts possess two kinds of "jurisdiction." Subject matter jurisdiction is the power to hear and determine cases of the general class to which any particular proceeding belongs. Personal jurisdiction requires that appropriate process be effected over the parties.

 Where these two exist, a court's decision may be set aside for legal error only

through direct appeal and not through collateral attack. Other phrases recently common to Indiana practice, like "jurisdiction over a particular case," confuse actual jurisdiction with legal error, and we will be better off ceasing such characterizations. *Id.* at 540. It seems clear that personal jurisdiction is not at issue here and that the trial court has "the power to hear and determine" cases of this sort. We note that Indiana Appellate Rule 14(H) provides that "[a]n interlocutory appeal shall not stay proceedings in the trial court unless the trial court or a judge of the Court of Appeals so orders." Given that Goldberg has no standing to challenge the trial court's ruling, we need not address this issue further.

opposition to Goldberg's motion to accept jurisdiction of this interlocutory appeal; namely, that Goldberg cannot challenge the trial court's order "because it does not damage, prejudice, or affect his legal rights in any way." Farno's Br. at 17. She quotes a federal case for the proposition that "[i]n class actions, '[t]he general rule, of course, is that a non-settling party does not have standing to object to a settlement between other parties.'" *Id.* (quoting *Agretti v. ANR Freight Sys., Inc.,* 982 F.2d 242, 246 (7th Cir.1992)). Both the Seventh Circuit and other circuits have adopted the doctrine that a defendant must "prove plain legal prejudice in order to have standing to challenge a partial settlement to which it is not a party." *Agretti,* 982 F.2d at 246 (citing, inter alia, *Quad/Graphics, Inc. v. Fass,* 724 F.2d 1230 (7th Cir.1983), and cases from the Fifth, Eighth, Ninth, and D.C. Circuits).

In *Quad/Graphics,* the court explained that the "plain legal prejudice" standard

> implements the policy consideration of encouraging the voluntary resolution of lawsuits and maintains consistency in the application of Federal Rule of Civil Procedure 41(a)(2) regarding voluntary dismissals.[8] Under that rule a defendant must demonstrate plain legal prejudice in order to prevent a voluntary dismissal of the claim against him by a plaintiff. In applying this standard [other courts] have determined that a showing of injury in fact, such as the prospect of a second lawsuit or the creation of a tactical advantage, is insufficient to justify denying the plaintiff's motion to dismiss. In the context of a partial settlement, Rule 41(a)(2) is usual-

ly the mechanism by which the settling defendants are eliminated from the case. It would indeed be incongruous for a non-settling defendant to have any less of a burden in attempting to prevent such a voluntary dismissal than he would if he were the party being dismissed.

724 F.2d at 1233 (footnote and citations omitted). In *Agretti,* the court further explained that "[t]he doctrine of plain legal prejudice does not depend upon whether the settlement involves a class action or simply ordinary litigation." 982 F.2d at 247. "Mere allegations of injury in fact or tactical disadvantage as a result of a settlement simply do not rise to the level of plain legal prejudice." *Id.* Rather, a non-settling party must show that the settlement interfered with its contract rights or its "ability to seek contribution or indemnification," or that the settlement stripped "the party of a legal claim or cause of action, such as a cross-claim or the right to present relevant evidence at trial." *Id.*

 When an Indiana Trial Rule is based on a corresponding Federal Rule of Civil Procedure, it is appropriate for our courts to look at federal court interpretations when applying the Indiana rule. *See Chicago Title Ins. Co. v. Gresh,* 888 N.E.2d 779, 782 (Ind.Ct.App.2008). Given that the "plain legal prejudice" standard is based on Federal Rule 41(a)(2), which is substantially similar to Indiana Trial Rule 41(A)(2), and that "Indiana strongly favors settlement agreements," *Georgos v. Jackson,* 790 N.E.2d 448, 453 (Ind.2003), we hereby adopt that standard for determining whether a non-settling defendant, such as Goldberg, has standing to challenge a

---

8. Federal Rule 41(a)(2) says,

 Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dis-

miss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

partial settlement to which it is not a party, whether in "a class action or simply ordinary litigation." *Agretti*, 982 F.2d at 247. We agree with Farno that Goldberg has failed to establish plain legal prejudice in this case. It is undisputed that the class settlement did not interfere with Goldberg's contractual rights or his "ability to seek contribution or indemnification," nor did it strip him of "a legal claim or cause of action." *Id.*

In his reply brief, Goldberg complains that the attorney's fees to be paid to Farno's counsel pursuant to the settlement will reduce the amount of money received by the trusts, which "represents an increase in the amount of potential damages that may be claimed against [him]." Appellants' Reply Br. at 8. He further asserts that the costs associated with notice to the class regarding the settlement "will necessarily increase the amount of potential damages that may be claimed against [him]," as will any notification costs incurred if the litigation class is later certified. *Id.* Finally, he contends that "[w]hatever additional cooperation the Settlement Agreement requires beyond the signatories' obligations under the Indiana Trial Rules operates to prejudice [him] and cause him immediate danger of sustaining direct injury." *Id.* at 8–9 (citation and quotation marks omitted). At most, the potential injuries claimed by Goldberg are merely injuries in fact or tactical disadvantages, which do not constitute plain legal prejudice. *Agretti*, 982 F.2d at 247. As such, Goldberg has no standing to challenge the trial court's ruling. Therefore, we affirm.

Affirmed.

ROBB, C.J., and NAJAM, J., concur.