Angela K. FARNO, on behalf of herself and all others similarly situated, Appellant–Plaintiff,

v.

ANSURE MORTUARIES OF INDIANA, LLC, et al., Appellees–Defendants.

No. 41A05–1002–PL–104.

Court of Appeals of Indiana.

Sept. 26, 2011.

Irwin B. Levin, Richard E. Shevitz, Vess A. Miller, Lynn A. Toops, Cohen & Malad, LLP, Indianapolis, IN, Attorneys for Appellant.

Jackie M. Bennett, Jr., Anthony Paganelli, Taft Stettinius & Hollister LLP, Indianapolis, IN, H. Nicholas Berberian (pro hac vice), Terry D. Weissman (pro hac vice), Kyle D. Rettberg (pro hac vice), Neal, Gerber & Eisenberg LLP, Chicago, IL, Attorneys for Appellee Smith Barney.

Kathleen A. DeLaney, Christopher S. Stake, DeLaney & DeLaney LLC, Indianapolis, IN, Attorneys for Appellee Craig R. Bush.

David K. Herzog, Jon B. Laramore, Kevin M. Kimmerling, Baker & Daniels LLP, Indianapolis, IN, Attorneys for Appellee Forethought Federal Savings Bank.

Fred R. Biesecker, Donald M. Snemis, Brian J. Paul, Ice Miller LLP, Indianapolis, IN, Attorneys for Appellee Forest Lawn Memory Gardens, Inc.

## OPINION

CRONE, Judge.

### Case Summary

Angela K. Farno pre-paid for a burial space with perpetual care services as well

as funeral services and merchandise at a Greenwood cemetery. She later filed a putative class action lawsuit asserting numerous claims against numerous defendants, including Ansure Mortuaries of Indiana, LLC, and appellees Smith Barney, Craig R. Bush, Forethought Federal Savings Bank, and Forest Lawn Memory Gardens, Inc. (collectively, "Appellees"). The defendants allegedly were involved in the purchase of four Indiana cemeteries and the subsequent looting of their trust funds, which had been established pursuant to Indiana law to ensure both the perpetual care of the burial spaces and the eventual delivery of the "pre-need" funeral services and merchandise. The trial court dismissed the claims regarding the perpetual care trust funds but upheld most of the remaining claims.

Pursuant to Indiana Trial Rule 23, Farno filed a motion requesting the certification of a class of plaintiffs who all share claims based on the alleged looting of the pre-need trust funds. Farno asserted that "a class action is the most fair, efficient, and economical method of resolving the customers' claims to restore the pre-need trust funds and to ensure that customers' pre-paid burial services and merchandise will be provided when they pass away." Appellant's App. at 885. The trial court denied Farno's motion, concluding that a class action was "not superior to other available methods for the fair and efficient adjudication of the issues in controversy." *Id.* at 270. According to the trial court, those "other available methods" included lawsuits that had been filed by the Indiana Securities Commissioner and a court-appointed receiver, as well as a pending sale of the cemeteries.

In this interlocutory appeal, Farno first contends that the trial court erroneously considered and resolved the merits of contested issues in ruling on her motion for class certification. Farno also contends that the trial court erroneously considered the pending sale of the cemeteries and other lawsuits involving different claims and parties in determining whether her class action is "superior to other available methods for the fair and efficient adjudication of the controversy" pursuant to Trial Rule 23. Finding no error in any respect, we affirm the trial court.

### Facts and Procedural History[1]

#### A. Background

The root of this controversy is the sale of Memory Gardens Management Corporation ("Memory Gardens"), a mortuary business that was owned by Fred W. Meyer, Jr., James R. Meyer, Thomas E. Meyer, Nancy J. Cade, and FTJ Meyer Associates, LLC (collectively, "the Meyers"). The Meyers owned and operated funeral homes and cemeteries in Ohio, Michigan, and Indiana, including Forest Lawn Memory Gardens ("Forest Lawn Cemetery") in Greenwood. The cemeteries presold burial spaces with perpetual care services as well as pre-need funeral services and merchandise.

Pursuant to Indiana law, cemeteries must deposit a portion of their customers' payments for burial spaces in irrevocable trusts to pay for their perpetual care. *See* Ind.Code §§ 23–14–18–1 through –10 ("the Perpetual Care Act"). Also pursuant to Indiana law, cemeteries must deposit all payments for pre-need burial merchandise and services in irrevocable trusts, from which funds may be released only after the burial merchandise and services are delivered. *See* Ind.Code §§ 30–2–13–1 through –39 ("the Pre–Need Act"). Fore-

---

1. We heard oral argument on August 25, 2011, in the Indiana Supreme Court courtroom. We thank counsel for their presentations.

thought Federal Savings Bank ("Forethought") was the trustee of the cemeteries' perpetual care and pre-need trusts, which in 2004 held approximately $24,000,000 in assets.

In 2004, the Meyers agreed to sell Memory Gardens to Robert Nelms for approximately $27,000,000, with $13,511,590 in cash due at closing and the balance financed by promissory notes secured by real estate mortgages on property owned by the Meyers and personal guarantees issued by Nelms. Ansure Mortuaries of Indiana, LLC ("Ansure"), a company wholly owned by Nelms, purchased the stock and membership interests of Memory Gardens in December 2004.

## B. The Lawsuits

### 1. The Meyers' Action

On January 2, 2008, the Meyers filed a complaint against Ansure and other Nelms-owned entities in Johnson Superior Court, seeking to enforce the promissory notes and foreclose the mortgages ("the Meyers' Action"). Among other things, the Meyers alleged that Nelms had "orchestrated improper transfers of millions of dollars" out of the cemeteries' perpetual care and pre-need trust accounts "for his own personal uses" and had concealed those conversions by "substitut[ing] worthless debentures or promises to pay the trusts the amounts of cash that Nelms withdrew from the trusts." Appellant's App. at 276. The Meyers further alleged that the trust accounts were "grossly underfunded and unable to meet the future care and service obligations for which those funds were held in trust." *Id.* at 277. The Meyers also asserted that as a result of Nelms's misappropriations, the security for the Meyers' mortgages "ha[d]

been severely damaged, and the mortgages [were] no longer adequate security for the notes that they secure," thus causing the acceleration of and default on the notes. *Id.* The Meyers sought judgment on the principal amount of the notes plus interest, as well as a decree of foreclosure on the mortgages and the appointment of "a qualified receiver over the Nelms Businesses such that they will begin to comply with their legal obligations[.]" *Id.* at 280.

### 2. The Securities Commissioner's Action

On January 17, 2008, Indiana Securities Commissioner Chris Naylor ("the Securities Commissioner") intervened in the Meyers' Action and filed a two-count complaint against Nelms, Ansure, Memory Gardens, Bush, and several other defendants, as well as ten additional "relief defendants," including Smith Barney, for injunctive relief, declaratory relief, and restitution ("the Securities Commissioner's Action") based on alleged violations of the Indiana Securities Act.[2] The Securities Commissioner alleged that Nelms obtained a $13,511,590 bridge loan from Bush to satisfy his cash payment to the Meyers. The Securities Commissioner also alleged that Nelms instructed Forethought "to liquidate all assets deposited in the Perpetual Care Trust accounts and the Pre–Need Trust Accounts ... and to transfer the proceeds" to Community Trust & Investment Company, Inc. ("Community Trust"). *Id.* at 392. In turn, Nelms instructed Community Trust to "begin executing a series of transfers of trust monies ... to various other entities and individuals[,]" including to Bush as repayment for the bridge loan and to Nelms himself via his account at Smith Barney. *Id.* at 393. Community Trust's

---

**2.** The Securities Commissioner's complaint was later amended to allege a single count of securities fraud.

vice president, defendant David Becher, allegedly "supervised and facilitated the transfer of trust proceeds from Forethought ... to Community Trust." *Id.* at 393. Defendant Mark Singer, a vice president at Smith Barney, allegedly "supervised and facilitated" other transfers, including one to Nelms's Smith Barney account. *Id.* at 395.

The Securities Commissioner further alleged that Nelms directed defendant Indiana Investment Corporation, LLC ("Indiana Investment"), which was owned by Nelms and Matthew Goldberg, to issue worthless debentures to the trust accounts held at Community Trust "in an attempt to conceal the fact that Nelms had fraudulently misappropriated cemetery trust monies." *Id.* at 394. The Securities Commissioner asked the court to freeze the defendants' assets and to appoint a receiver "with the duty of identifying and ascertaining all trust assets that have been misappropriated, immediately assume legal control, responsibility and supervision over all misappropriated trust assets, and file a complete accounting of all trust assets identified and misappropriated[.]" *Id.* at 387. The Meyers' Action and the Securities Commissioner's Action were transferred to Johnson Circuit Court ("the trial court") that same day.

On January 22, 2008, the trial court appointed Lynnette Gray as a temporary receiver to "control the operations and assets" of both Ansure and Memory Gardens and to "marshal and account for all trust fund assets of Memory Gardens[.]" *Id.* at 407. This appointment was made permanent in May 2008, and the trial court directed Gray ("the Receiver") to do the following:

A. Take control of [Ansure], including all wholly owned subsidiaries; *

B. Marshall [sic] and account for all assets of the business entities;

C. Marshall [sic] and account for all trust fund assets of the business entities;

D. Assume the management of the day-to-day operations [of] the business entities; and,

E. Manage the business operations of each entity in the best interests of the creditors and owner(s) thereof.

*Id.* at 503.

### 3. The Class Action

On January 24, 2008, William Fishback filed a four-count putative class action complaint ("the Class Action") in Marion Superior Court, seeking "to recover damages on behalf of customers of [Memory Gardens] who paid over Twenty Four Million Dollars to be held in trust to pay for perpetual care services at various cemeteries in Indiana[.]" *Id.* at 409. The named defendants were Memory Gardens, Community Trust, and Smith Barney. Fishback alleged that he had pre-paid for a mausoleum space with perpetual care services at Forest Lawn Cemetery in 1986 and that a portion of his purchase price had been deposited in the perpetual care trust fund. Fishback further alleged that Smith Barney facilitated Nelms's purchase of Memory Gardens and the subsequent transfer of the trust funds from Forethought to Community Trust to various outside entities. Fishback also alleged that Community Trust and Smith Barney violated the Indiana Racketeering Influenced and Corrupt Organizations Act ("RICO"), that Memory Gardens owed and breached a fiduciary duty to him and other class members, and that Memory Gardens breached its contracts with him and other class members "by, among other things, failing to retain funds paid ... for perpetual care services in the Memory Gardens Perpetual Care Trust Fund." *Id.* at 424. Fishback requested treble and punitive

damages plus attorney's fees for the alleged RICO violations and compensatory damages plus attorney's fees for the alleged breaches of fiduciary duty and contract.[3]

On June 30, 2008, a second amended putative class action complaint was filed, which added Farno as a plaintiff and added numerous defendants, including the Meyers, the Receiver, Ansure, Nelms and his wife Deborah, Smith Barney and Singer, Community Trust and Becher, Bush, Indiana Investment and Goldberg, Forethought, and Forest Lawn Memory Gardens, Inc. ("Forest Lawn"), an Ansure subsidiary that owned Forest Lawn Cemetery. Farno alleged that she had pre-paid for a mausoleum space with perpetual care services at Forest Lawn Cemetery and also had pre-paid for a casket and entombment services pursuant to a pre-need contract prior to December 2004. Farno's complaint alleged the following eleven counts: (I) violation of the Pre–Need Act against Ansure, Memory Gardens, Forest Lawn, the Receiver, the Nelmses, and the Meyers; (II) negligence per se for violation of the Perpetual Care Act against Ansure, Memory Gardens, Forest Lawn, the Receiver, and the Nelmses; (III) Indiana Crime Victims Relief Act for theft and receiving stolen property against Ansure, Memory Gardens, Forest Lawn, the Receiver, the Nelmses, Smith Barney, Singer, Bush, Community Trust, Becher, Indiana Investment, and Goldberg; (IV) RICO violations against Ansure, Memory Gardens, Forest Lawn, the Receiver, the Nelmses, Smith Barney, Singer, Bush, Becher, Indiana Investment, and Goldberg; (V) civil conspiracy against Ansure, Memory Gardens, Forest Lawn, the Receiver, the Nelmses, Smith Barney, Singer, Bush, Community Trust, Becher, Indiana Investment, and Goldberg; (VI) breach of contract against Ansure, Memory Gardens, Forest Lawn, and the Receiver; (VII) breach of fiduciary duty against Ansure, Memory Gardens, Forest Lawn, the Receiver, the Nelmses, Smith Barney, Singer, Bush, Indiana Investment, and the Meyers; (VIII) constructive trust against the Nelmses, Bush, Indiana Investment, and the Meyers; (IX) unjust enrichment against the Nelmses, Bush, Indiana Investment, and the Meyers; (X) breach of fiduciary duty against Forethought and Community Trust; and (XI) negligence against all defendants.

Because the first three counts figure prominently in this appeal, we excerpt the relevant allegations below:

### COUNT I

. . . .

112. Indiana Code section 30–2–13–38(a) provides that "[a] seller [4] who violates a provision of this chapter [ (Chapter 13. Payment of Funeral, Burial Services, or Merchandise in Advance of Need) ] commits an uncured deceptive act."

113. Indiana Code section 30–2–13–38(d) further provides that "[a] purchas-

---

3. In February 2008, Smith Barney removed the case to the U.S. District Court for the Southern District of Indiana, "arguing that the federal Securities Litigation Uniform Standards Act (SLUSA) authorized removal and then require[d] dismissal with prejudice." Appellant's App. at 507. The district court disagreed and remanded the case in May 2008.

4. The Pre–Need Act defines "seller" as "a person doing business as a sole proprietor, a firm, a limited liability company, a corporation, an association, or a partnership contracting to provide services or merchandise, or both, to a named individual." Ind.Code § 30–2–13–10.

er [5] has a private right of action against a seller who commits an uncured deceptive act."

114. Under the Indiana Deceptive Consumer Sales Act, Indiana Code section 24–5–0.5–4:

A person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater. The court may increase damages for a willful deceptive act in an amount that does not exceed the greater of:

(1) three (3) times the actual damages of the consumer suffering the loss; or

(2) one thousand dollars ($1,000).

115. As set forth above, Memory Gardens, Nelms, and the Meyer Family each violated Indiana Code chapter 30–2–13, including but not limited to, sections 12, 12.1, 12.5, 14(d), and 38, by failing to place all required payments in trust and by withdrawing the funds from trust without having delivered purchasers' burial services and merchandise.

116. As a direct and proximate result of these violations, Plaintiffs and Class Members have suffered substantial damages, losses, and injuries.

WHEREFORE, the Plaintiffs request that the Court enter judgment against [the aforementioned defendants] and in favor of the Plaintiffs and Class Members for the damages caused by their negligence, and for attorneys' fees, prejudgment interest, the costs of this action, and for all other relief as the Court finds just and proper.

## COUNT II

. . . .

118. Indiana Code section 23–14–48–2(b) provides that "The principal of a perpetual care fund established under this section shall permanently remain intact."

119. Indiana Code section 23–14–51–3 provides that "No loans or pledges of money or property shall be made from the perpetual care fund of a cemetery: (1) to or for the benefit of the owner of the cemetery; or (2) to any shareholder, officer, director, or employee of the cemetery."

120. Indiana Code section 23–14–50–2(b) provides that the funds in a perpetual care trust account are considered to be a provision "for the discharge of a duty due from the person or persons contributing to the fund [ (i.e., cemetery owners) ] to the person or persons whose remains are or will be interred in the cemetery [ (i.e., purchasers of burial rights) ]."

121. Memory Gardens and Nelms violated Indiana Code sections 23–14–48–2, 23–14–51–3, [and] 23–14–50–2 by withdrawing substantially all of the money in the perpetual care trusts associated with Memory Gardens that was paid by Plaintiffs and Class Members.

122. As a direct and proximate result of Memory Gardens' and Nelms['] violations of Indiana Code sections 23–14–48–2, 23–14–51–3, and 23–14–50–2, the Plaintiffs and Class Members have suffered substantial damages, losses, and injuries.

WHEREFORE, the Plaintiffs request that the Court enter judgment against

---

**5.** The Pre–Need Act defines "purchaser" in pertinent part as "a person or firm contracting with a seller for services or merchandise to be provided or delivered for a named individual." Ind.Code § 30–2–13–9(a).

[the aforementioned defendants] and in favor of the Plaintiffs and Class members for the damages caused by their negligence, and for attorneys' fees, prejudgment interest, the costs of this action, and for all other relief as the Court finds just and proper.

### COUNT III

. . . .

124. The Indiana Crime Victims Relief Act, Ind.Code §§ 34–24–3–1 to –4, expressly provides, in part, that:

> If a person suffers a pecuniary loss as a result of a violation of IC 35–43 [which includes the criminal offenses theft and receiving stolen property] . . ., the person may bring a civil action against the person who caused the loss for the following:
>
> > (1) An amount not to exceed three (3) times the actual damages of the person suffering the loss.
> >
> > (2) The costs of the action.[6]

125. [The aforementioned defendants] violated IC 35–43–4–2 by (i) knowingly or intentionally exerting unauthorized control over the funds paid by the Plaintiffs and Class Members and held in the perpetual care and pre-need trusts associated with Memory Gardens, with the intent to deprive the Plaintiffs and Class Members of the same; and (ii) knowingly or intentionally receiving, retaining, or disposing of the funds paid by the Plaintiffs and Class Members and held in the perpetual care and pre-need trusts associated with Memory Gardens that were the subject of theft.

126. These violations of IC 35–43–4–2 directly and proximately caused Plaintiffs and Class Members to suffer a pecuniary loss.

WHEREFORE, the Plaintiffs request that the Court enter judgment against [the aforementioned defendants] and in favor of the Plaintiffs and Class Members in an amount sufficient to compensate the Plaintiffs and Class Members for the damages caused by these Defendants' violations, and for treble damages, attorneys' fees, prejudgment interest, the costs of this action, all damages recoverable under the Crime Victims Relief Act, and for all other relief as the Court finds just and proper.

*Id.* at 542–45 (some alterations added).

On August 5, 2008, the trial court consolidated the Class Action with the Meyers' Action and the Security Commissioner's Action for pretrial purposes. In August and September 2008, the Class Action defendants filed motions to dismiss Farno's complaint pursuant to Indiana Trial Rule 12(B)(6) for failure to state a claim upon which relief can be granted.[7]

### 4. The Receiver's Action

On November 7, 2008, the Receiver filed her first amended complaint with the trial court ("the Receiver's Action"). The complaint asserted nine counts against the Nelmses, the Meyers, Singer, Goldberg, Community Trust, Becher, and other defendants, including Security Financial Management Corp., LLC ("Security Financial"), Community Trust's successor as trustee.[8] The Receiver's complaint recited

---

**6.** The Crime Victims Relief Act also provides that a plaintiff may seek to recover "[a] reasonable attorney's fee." Ind.Code § 34–24–3–1(3).

**7.** Bush, a Michigan resident, filed a motion to dismiss for lack of personal jurisdiction pur-

suant to Indiana Trial Rule 12(B)(2), which the trial court denied.

**8.** According to the Receiver's complaint, Nelms helped to create and owned a 50% equity interest in Security Financial. Appellant's App. at 700. During Security Finan-

many of the same facts alleged in Farno's complaint regarding the sale of Memory Gardens and asserted many similar claims, including RICO violations, constructive fraud/unjust enrichment, theft, conversion, negligence, breach of fiduciary duty, breach of contract, and constructive trust. The Receiver requested a judgment ordering the defendants to "reimburse the Receivership for all funds received from the Trust" as well as actual, consequential, and punitive damages plus attorney's fees and costs. *Id.* at 716. The Receiver later amended her complaint to name additional defendants, including Smith Barney and Deutsche Bank Securities, Inc. ("Deutsche Bank"), Singer's prior employer, which allegedly assisted with Nelms's purchase of Memory Gardens and received money from the trusts.

### C.  *Ruling on Motions to Dismiss*

On December 17, 2008, the trial court issued an order on the Class Action defendants' motions to dismiss that reads in pertinent part as follows:

16. Although occasionally argued with distinct language, the Defendants each present the same arguments, which can be consolidated, in large part, as follows:

A.  The Plaintiffs do not have standing to raise any of the claims presented:

1. The Court's Receiver is the proper party to seek recovery of the Trust Funds because she stands, in effect, in the shoes of the Trustee; and,

2. The Plaintiffs failed to seek leave of the Receivership Court prior to initiating their action in the Marion Superior Court;

B.  The statutes regarding Perpetual Care Funds do not give rise to a private right of action;

C.  Each of the Plaintiffs' causes of action fail for want of sufficient allegations of damages; and,

D.  Plaintiffs' RICO claims fail[ ] for want of sufficient allegations of an "enterprise."

17.  In addition to the consolidated arguments summarized above, individual arguments raised by specific Defendants have been argued, in large part, as follows.

A.  The individual Nelms and Meyer Family Defendants are protected by the corporate structure of the Corporate Defendants.

B.  Private rights of action regarding the Pre–Need Funds are only statutorily granted against "sellers," which excludes those Defendants not directly involved in the cemetery/funeral business (i.e. [Deborah Nelms, Smith Barney, Singer, Bush, Community Trust, Becher, Forethought, Indiana Investment, and Goldberg] ).

C.  Defendants Smith Barney, Singer, Bush, [Indiana Investment], and Goldberg owed no fiduciary duty to the Plaintiffs.

D.  Plaintiffs' unjust enrichment claims against the Meyer Family Defendants fail for want of allegations that the Meyer Family Defendants received anything from the Plaintiffs.

E.  Plaintiffs' claims against Forethought fail for want of any contractual or statutory duty to the Plaintiffs.

cial's tenure as trustee, at Nelms's direction, the trusts allegedly lent $2,500,000 to Indiana

Investment via an unsecured promissory note in violation of Indiana securities laws. *Id.*

F. Plaintiffs' claims against Forethought are barred by the statute of limitations.

G. The Court does not have personal jurisdiction over Bush.

H. The Complaint contains no allegations of wrongdoing against [Deborah Nelms].

. . . .

31. The facts supporting Ms. Gray's appointment, the scope of her appointment, and her actions as this Court's Receiver since her appointment, while being facts known to the Parties and the Court, are unavailable for substantive use in resolving the contested issues presented by the Defendants' motions as they are outside the confines of the Plaintiffs' Complaint.

. . . .

52. [A]t least a portion of the Plaintiffs' interests are directly related to the present lack of a qualified trustee for the Funds. For that reason, the Plaintiffs' cause may present a substantial risk of: 1) duplicating the Receiver's efforts to marshal corporate assets and to control the ongoing business interests of the Corporate Defendants and the Trust Funds; and, 2) creating inconsistent judicial determinations involving the same parties and claims.

53. As such, the Court's authorization of the Plaintiffs' leave to bring suit against the Receiver is hereby conditioned on the following:

A. Any recovery by the Plaintiffs in this matter shall be subject to a determination by the Receivership Court . . . as to how much, if any, of such proceeds should be returned to the PreNeed Trusts;

B. Any request for payment of fees or costs associated with the Plaintiffs' action will be presumed to be a claim against the Receivership Estate which is secondary to the return of any recovered Trust proceeds, until the Receivership Court determines otherwise. . . . [9]

54. The Defendants argue that the Plaintiffs' Complaint should be dismissed because the Plaintiffs do not have standing to present any of the claims raised therein as the Receiver is the proper party to bring actions based upon damage to the Trusts.

55. The gravamen of the Defendants' arguments, including those raised by the Receiver, is that the Receiver stands in the shoes of the trustee for this purpose and is already pursuing

9. At Farno's request, the trial court subsequently modified paragraph 53 as follows:

53. As such, the Court's authorization of the Plaintiffs' leave to bring suit against the Receiver is hereby conditioned on the following:

A. The pending claims brought in *Farno* by the Farno Plaintiffs against the Receiver are hereby **STAYED** until further order of the Court.

i. This stay shall not bar the Farno Plaintiffs or any individual class member from filing claims or otherwise participating in any claims process which is implemented in the Receivership.

ii. This stay shall not bar the information sharing or discovery between the Receiver and the Farno Plaintiffs in compliance with Indiana law.

B. Any money damages recovered through the class action in *Farno v. Ansure Mortuaries* . . . shall be subject to a determination by this Court as to the amount which shall be returned to the Memory Garden trust funds.

C. Any request that attorneys fees or costs associated with the *Farno* action be paid from money damages recovered through the class action shall be based on and reviewed under common-fund principles in compliance with Indiana law.

Smith Barney's App. at 27–28.

actions based upon damage to the trusts.

56. However, in order for this Court to make such findings, it would have to rely upon matters outside the pleadings.

. . . .

58. Assuming the truth of the Plaintiffs' allegations, that there is currently no trustee in place who is authorized by Indiana law to undertake supervision of the Trusts, the Plaintiffs have standing to pursue claims which are otherwise sufficient.

*Id.* at 723–30.

In addition, the trial court upheld the plaintiffs' claims under the Pre–Need Act, which "specifically provides for a private right of action by a purchaser against a seller," but dismissed their claims under the Perpetual Care Act, which does not. *Id.* at 732. The dismissal of the perpetual care claims, which were the only claims asserted by Fishback, led to the dismissal of Fishback as a representative plaintiff and the Class Action being recaptioned to list Farno as the only named plaintiff. The trial court also determined that the plaintiffs had sufficiently alleged damages; dismissed all claims against Deborah Nelms; dismissed the general negligence claims against Smith Barney, Singer, and Goldberg; and upheld the rest of the plaintiffs' claims. As far as we can tell, no appeal has been taken from the trial court's order on the motions to dismiss.

### D. Farno's Motion for Class Certification

On June 30, 2009, the trial court consolidated the Class Action with the Meyers' Action, the Securities Commissioner's Action, and the Receiver's Action for trial purposes pursuant to Indiana Trial Rule 42(D). On August 3, 2009, Farno moved for certification of a plaintiff class pursuant to Indiana Trial Rule 23. To put Farno's motion (and the trial court's subsequent ruling) in context, it is helpful to consider the following relevant provisions of Trial Rule 23:

**(A) Prerequisites to a class action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

**(B) Class actions maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of:

(a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding de-

claratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(d) the difficulties likely to be encountered in the management of a class action.

**(C) Determination by order whether class action to be maintained—Notice—Judgment—Actions conducted partially as class actions.**

(1) As soon as practicable after the commencement of an action brought as a class action, the court, upon hearing or waiver of hearing, shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.

(2) In any class action maintained under subdivision (B)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that:

(a) the court will exclude him from the class if he so requests by a specified date;

(b) the judgment, whether favorable or not, will include all members who do not request exclusion; and

(c) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

. . . .

(4) When appropriate:

(a) an action may be brought or maintained as a class action with respect to particular issues; or

(b) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.

Farno requested the certification of a class comprising "[a]ll persons in the State of Indiana who purchased pre-paid burial services or merchandise before December 30, 2004" from four Indiana cemeteries [10] purchased by Nelms "who all share claims that are based on the Defendants' multi-million-dollar looting and underfunding of the pre-need trust funds associated with those cemeteries." *Id.* at 907, 885. Farno asserted that "a class action is the most fair, efficient, and economical method of resolving the customers' claims to restore the pre-need trust funds and to ensure that customers' pre-paid burial services and merchandise will be provided when they pass away." *Id.* at 885.[11] Farno

---

**10.** The four cemeteries are Forest Lawn Cemetery, Chapel Hill Memorial Gardens, Covington Memorial Gardens, and Lincoln Memory Gardens. Appellant's App. at 880.

**11.** According to an analysis performed by the Receiver in July 2009, the pre-need and per-

further asserted that she satisfied the requirements of Trial Rule 23(A),——(B)(1), and—(B)(3). Most of the Class Action defendants filed (or joined) responses in opposition to Farno's motion. The trial court held a hearing on Farno's motion on September 30, 2009.

### E. Ruling on Farno's Motion for Class Certification

On January 22, 2010, the trial court issued an order denying Farno's motion for class certification. The court determined that Farno had satisfied all the requirements of Trial Rule 23(A). The court also determined that Farno had not satisfied the requirements of Trial Rule 23(B)(1), which Farno does not challenge on appeal. As for Trial Rule 23(B)(3), the court concluded:

65. "Predominance requires more than commonality. Predominance cannot be established merely by facts showing a common course of conduct, but the common facts must also actually 'predominate over any questions affecting only individual members.'" *Associated Medical Networks [v. Lewis,* 824 N.E.2d 679, 685 (Ind.2005) ] *approving Wal–Mart Stores, Inc. v. Bailey,* 808 N.E.2d 1198, 1206 (Ind.Ct. App.2004).

66. Indiana courts have not developed a precise test for determining whether common questions of law or fact predominate; instead, the Court must conduct a pragmatic assessment of the entire action and all the issues in-

volved. *7–Eleven v. Bowens,* 857 N.E.2d 382, 393 (Ind.Ct.App.2006).

67. Thus, the Court must consider

In making this decision, we consider whether the substantive elements of class members' claims require the same proof for each class member; whether the proposed class is bound together by a mutual interest in resolving common questions more than it is divided by individual interests; whether the resolution of an issue common to the class would significantly advance the litigation; whether one or more common issues constitute significant parts of each class member's individual cases; whether the common questions are central to all of the member's [sic] claims; and whether the same theory of liability is asserted by or against all class members, and all defendants raise the same basic defenses.

*Associated Medical · Networks,* 824 N.E.2d at 685.[12]

68. Indiana and federal courts both accept the general proposition that a class action " 'is designed to be a means of achieving economies of time, effort, and expense.'" *Associated Medical Networks,* 824 N.E.2d at 685 *quoting* James Wm. Moore, 5 MOORE'S FEDERAL PRACTICE § 23.44[1], at 23–207, and cases cited therein at footnote 4.

---

petual care trusts were underfunded by $19,205,706.15 and $12,300,000 respectively, for a total of $31,505,706.15. Appellant's App. at 1583.

12. We observe that the trial court did not specifically find that Farno had satisfied the predominance requirement of Trial Rule 23(B)(3). Neither side explicitly raises this as an issue on appeal, although Farno says that

"no Indiana case has based denial of class certification on superiority alone, and 'the conclusion that common issues of law and fact predominate ... strongly militates in favor of a class action as a superior means of litigating th[e] case.'" Farno's Br. at 39–40 (quoting *County of Monroe, Fla. v. Priceline.com, Inc.,* 265 F.R.D. 659, 671–72 (S.D.Fla.2010)).

69. Indeed, class actions are designed to resolve common questions as efficiently and expeditiously as possible. *See Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 868, 104 S.Ct. 2794, 2796 [81 L.Ed.2d 718] (U.S.1984); *State ex rel. Firestone v. Parke Circuit Court*, 621 N.E.2d 1113, 1114 (Ind.1993); *and, 7–Eleven*, 857 N.E.2d 382 at 389.

70. As a result of the unique facts presented by this [sic] consolidated matters, the proposed class action is not superior to the other available methods for the fair and efficient adjudication of the controversy.

71. As stated *supra*, the Receivership Order directed the Receiver to "[m]arshall [sic] and account for all trust fund assets of the business entities."

72. In furtherance of her authority and appointment, the Receiver has filed a complaint in the *Meyer* matter seeking damages owed to the Ansure businesses and the Ansure Trusts.

73. The Court notes that both the Receiver and Farno have pled causes of action for Breach of Contract, Breach of Fiduciary Duty, Indiana Crime Victims' Act, Indiana RICO, and Negligence. Of particular note in these similar claims are the causes of action under the Indiana Crime Victims' Act and the Indiana RICO Act which allow for multiple recoveries.

74. "[A]t common law receivers could not be sued without leave of court, and only upon conditions fixed by the appointing court." *Pitcairn v. Drummond*, 216 Ind. 54, 56, 23 N.E.2d 21, 22 (1939).

75. Thus, in addition to recognizing the preference for parties to seek leave prior to initiating suit against a court-appointed receiver, Indiana courts have also recognized the ability of the Receivership Court to place conditions upon any such suit. *Id.; see also Hazifotis v. Citizens Federal Savings & Loan Association*, 537 N.E.2d 35, 37–38 (Ind.Ct.App.1989).

76. While the receivership is in place, any litigation commenced by other class members must be brought with leave of Court or in this Court. Accordingly, a legal mechanism is already in place which controls the venue of all actions such as those initiated by Farno.

77. Further, the State of Indiana has filed its Complaint seeking similar damages for the purposes of restoring the Ansure Trusts.

78. In addition to the civil causes of action raised by the Parties, the Court has, in its "Order on August 31, 2009 Status/Motions Hearing" entered September 15, 2009, addressed another methodology whereby the class members' claims could be resolved through the restoration of liquid assets into the Ansure Trusts[:]

48. In addition, the costs of the Receivership have been paid with the funds which were 'repatriated' by the Receiver. These 'repatriated funds' are finite and cannot be expected to cover the costs of the Receivership indefinitely.

[ . . . ]

73. In this spirit, and in the interests of bringing these matters to prompt conclusion, the Court shall delay the implementation of sale procedures for thirty (30) days in order to allow Robert Nelms and/or the Ansure Corporate Parties to create a definitive plan to restore liquid assets in the Ansure Trusts.

74. In the absence of such a definitive plan, the Court anticipates that it will authorize the Receiver to begin the liquidation process as a step towards the paramount goal of re-

storing liquidity to the Ansure Trusts.

79. The claims being prosecuted by the Receiver and the State of Indiana address both categories of trusts relevant to this action: Perpetual Care and Pre–Need trusts. However, as a result of the dismissal of William Fishback and his claims from this matter on December 17, 2008, Plaintiff Farno's action is limited to addressing only the Pre–Need trusts.

80. A certification of Farno's recommended class will further complicate an already complex legal proceeding, at least in part, by duplicating the Receiver's existing claims. Further, compensation of class counsel risks duplication of administrative costs, and, thus, a reduction in the funds available to restore the Ansure Trusts.

81. Therefore, as a result of proceedings already ongoing to resolve or remediate the damage done to the Ansure Trusts, the class action sought by Farno is not superior to other available methods for the fair and efficient adjudication of the issues in controversy. *See In re Bally Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 622 ( [Bankr.]S.D.N.Y.2009).

82. Therefore, "Plaintiff Farno's Motion for Class Certification" is hereby **DENIED**.

*Id.* at 268–70.

On January 26, 2010, Farno moved to stay proceedings pending an appeal of the trial court's order. The Receiver also moved for a stay. That same day, the trial court granted Farno's motion for stay. The trial court subsequently granted the Receiver's motion to stay in part and vacated the trial dates until further order of the court. On February 22, 2010, pursuant to Indiana Appellate Rule 14(C),[13] Farno filed with this Court a motion to accept jurisdiction of an interlocutory appeal of the trial court's order denying class certification, which was granted on April 12, 2010.

### F. Subsequent Developments [14]

Prior to January 2010, the Receiver engaged in negotiations with the Meyers, Nelms, and the State of Indiana, during which the parties discussed "the actual amount that would be necessary to restore the funeral and cemetery trust funds of the Ansure Companies to liquidity." *Id.* at 1746. The parties agreed that $13,551,000, along with approximately $7,000,000 under the Receiver's control (a total of $20,551,000), "would make the trusts sufficiently liquid." *Id.* On January 12, 2010, the trial court issued an order establishing procedures for a sale of Ansure by the Receiver.

On January 26, 2010, the Securities Commissioner entered into a settlement agreement with Nelms and Ansure, pursuant to which Nelms was required to sell the Ansure companies to StoneMor Oper-

---

**13.** Appellate Rule 14(C) says, "The Court of Appeals, in its discretion, may accept jurisdiction over an appeal from an interlocutory order granting or denying class action certification under Ind. Trial Rule 23."

**14.** The parties have expended considerable ink describing events that occurred after the denial of Farno's motion for class certification to bolster their respective arguments for and against the trial court's ruling. At oral argument, however, both sides properly conceded that we may consider only the events that occurred prior to the ruling in determining the propriety of the ruling. We mention the post-ruling events solely for the purpose of providing context for our discussion of Trial Rule 23(C)(1) at the conclusion of this opinion.

ating LLC ("StoneMor").[15] StoneMor agreed to acquire Ansure's cemeteries and funeral homes, assume its obligations to maintain the cemeteries, honor all pre-need contracts, and advance over $14,800,000 to trusts established by Stone-Mor. As part of the acquisition, both the Receiver and the Meyers assigned to StoneMor all their claims and causes of action related to the purchase of the cemeteries and the misappropriation of the trust funds. On January 28, 2010, the Securities Commissioner moved to terminate the receivership following the closing of StoneMor's purchase of Ansure. On July 20, 2011, the Securities Commissioner moved to dismiss his action with prejudice.

On April 2, 2010, the Receiver filed a motion requesting approval of the sale of the Ansure companies to StoneMor, and the trial court approved the sale agreement with modifications on April 29, 2010.[16] StoneMor closed on the transaction on June 21, 2010. Independence Trust Company ("Independence Trust")

was appointed as the trustee for the perpetual care and pre-need trusts established by StoneMor. In November 2010, the trial court allowed StoneMor and Independence Trust to be substituted for the Receiver and the Meyers as plaintiffs and to file an amended complaint.[17]

In the meantime, on June 18, 2010, Farno filed motions requesting that the trial court lift the aforementioned stay so that she could seek preliminary approval of a class action settlement agreement that she had reached with various defendants, including Forest Lawn, Ansure, the Receiver, Nelms, and the Meyers; that the court grant preliminary approval of the settlement agreement and certify the same plaintiff class for purposes of the settlement; and that the court set a hearing on her motions for June 22, 2010. At that hearing, Goldberg and Indiana Investment were the only non-settling defendants to object. That same day, the trial court issued an order granting preliminary approval to the class action settlement agreement.[18]

---

15. Forest Lawn says that "[a]s a result of the StoneMor acquisition, StoneMor now owns the stock of [Forest Lawn]. Forest Lawn remains a defendant in the *Farno* action and is therefore a party to this appeal under Ind. Appellate Rule 17(A)." Forest Lawn's Br. at 3; *see* Ind. Appellate Rule 17(A) ("A party of record in the trial court ... shall be a party on appeal.").

16. Farno says that the agreement tendered by the Receiver "allowed StoneMor to seek to cut[ ]off the statutorily guaranteed right of customers to transfer their pre-need contracts to a different cemetery and to limit withdrawal of any trust funds for customers who sought a transfer." Farno's Br. at 15; *see* Ind.Code § 30–2–13–13 (authorizing transfer of pre-need contracts). Farno also says that the agreement

purported to assign the claims brought by the customers to StoneMor, and it proposed non-compliance with the statutory notice requirements that customers are entitled to

under the Pre–Need Act when a cemetery is sold. [Farno] objected to these terms, and they subsequently were removed from the agreement, which the trial court approved as modified.

*Id.* (citations to appendix omitted); *see* Ind. Code § 30–2–13–15 (specifying notice requirements in event of cemetery sale and other occurrences).

17. According to Forest Lawn, "[t]he Stone-Mor Complaint seeks damages from several of the principal parties named in the class action complaint, i.e., Smith Barney, Mark Singer, Community Trust ..., and Matthew Goldberg. StoneMor's Complaint also names Deutsche Bank Securities, Inc. and Corporate Legal Counsel, PLC, neither of which is named in Farno's complaint." Forest Lawn's Br. at 6. Smith Barney filed a motion to compel arbitration of the claims asserted by StoneMor and Independence Trust, which the trial court denied. We recently affirmed that ruling in *Smith Barney v. StoneMor Operating LLC,* 953 N.E.2d 554 (Ind.Ct.App.2011).

On July 6, 2010, the Receiver moved to terminate the receivership. On July 26, 2010, the trial court granted the motion and ordered a final report. On December 27, 2010, the trial court approved the Receiver's final report and ordered the receivership to remain open for the limited purpose of allowing the Receiver to "take any additional action that may be necessary" regarding the misappropriation claims now being pursued by StoneMor and Independence Trust. Forest Lawn's App. at 107.

## Discussion and Decision

### *Standard of Review*

■■■ "The principal purpose of the class action device is 'promotion of efficiency and economy of litigation.'" *Gomez v. St. Vincent Health, Inc.,* 622 F.Supp.2d 710, 717 (S.D.Ind.2008) (quoting *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 349, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983)). The plaintiff has the burden of establishing that the class certification requirements of Trial Rule 23 have been met. *NIPSCO v. Bolka,* 693 N.E.2d 613, 615 (Ind.Ct.App. 1998), *trans. denied.* Failure to meet any one of the requirements results in the denial of class status. *Rene ex rel. Rene v. Reed,* 726 N.E.2d 808, 816 (Ind.Ct.App. 2000). Whether these prerequisites have been met is a factual determination to be made by the trial court. *Ind. Bus. Coll. v. Hollowell,* 818 N.E.2d 943, 949 (Ind.Ct. App.2004).

■■■ The trial court has broad discretion in determining whether an action is maintainable as a class action, including whether the "superiority" requirement of Trial Rule 23(B)(3) has been met. *Id.* at 949, 951; *see also Becker v. Schenley Indus., Inc.,* 557 F.2d 346, 348 (2nd Cir.1977)

("The determination of whether an action can be maintained as a class action, and particularly whether a class action is the 'superior' method of resolving the controversy, is one which is peculiarly within the discretion of the trial judge."); *Rutledge v. Elec. Hose & Rubber Co.,* 511 F.2d 668, 673 (9th Cir.1975) ("In deciding whether to allow a class action, a primary determination to be made is whether the class action is superior to, and not just as good as, other available methods for handing the controversy, and such a determination lies in an area where the trial court's discretion is paramount."). "An abuse of discretion occurs when the trial court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Rene,* 726 N.E.2d at 817 (citation and quotation marks omitted); *see also Associated Med. Networks v. Lewis,* 824 N.E.2d 679, 682 (Ind.2005) ("A misinterpretation of law, however, will not justify affirmance under the abuse of discretion standard.").

■■■ "The trial court's certification determination will be affirmed if supported by substantial evidence." *Id.* "Although we defer substantially to the trial court's findings of fact, we do not do so as to the conclusions of law. We evaluate questions of law de novo." *Perdue v. Murphy,* 915 N.E.2d 498, 504 (Ind.Ct.App.2009). Finally, we note that "[b]ecause Indiana Trial Rule 23 is based on Rule 23 of the Federal Rules of Civil Procedure, it is appropriate to consider federal court interpretations when applying the Indiana rule." *Chicago Title Ins. Co. v. Gresh,* 888 N.E.2d 779, 782 (Ind.Ct.App.2008).

### *I. Inquiry into Merits*

Initially, Farno contends that the trial court improperly based its order denying

---

**18.** Goldberg and Indiana Investment's appeal from that order is addressed in the companion case of *Goldberg v. Farno,* 953 N.E.2d 1244 (Ind.Ct.App.2011).

class certification "on a comparative analysis of the merits." Appellant's Br. at 20. We have stated that

[a] certification hearing is not intended to be a trial on the merits, and Trial Rule 23 does not require a potential class representative to show a likelihood of success on the merits in order to have his claim certified as a class action. Assuming the merits of an action, a trial court must determine whether the plaintiff has satisfied the requirements for class certification under Trial Rule 23.

*Rene*, 726 N.E.2d at 816 (citation and quotation marks omitted).

██ Farno's argument is twofold. First, she asserts that the trial court "impermissibly based its procedural class certification decision on the merits by deciding that the Class Action was not superior because the trial court had dismissed some of the substantive claims" (namely, the perpetual care claims), which she characterizes as "a decision that is currently not ripe for appeal." Appellant's Br. at 21.[19] Farno's argument ignores the fact that she specifically requested class certification only for those who "purchased pre-paid burial services or merchandise" and "who all share claims that are based on the . . . looting and underfunding of the pre-need trust funds." Appellant's App. at 907, 885. Moreover, Fishback (who was represented by Farno's counsel) could have asked the trial court to enter its dismissal order as a final judgment pursuant to Indiana Trial Rule 54(B) or certify it for a discretionary interlocutory appeal pursuant to Indiana Appellate Rule 14(B), but, for whatever reason, he elected not to do so.[20] Finally, "[i]t is a settled question that some inquiry into the merits at the class certification stage is not only permissible but appropriate to the extent that the merits overlap the Rule 23 criteria." *In re New Motor Vehicles Canadian Export Antitrust Litigation*, 522 F.3d 6, 24 (1st Cir.2008) (citing, inter alia, *Gen. Tel. Co. of the Sw. v. Fal-*

---

19. Smith Barney says that in its response to Farno's motion for class certification, it "specifically raised the trial court's prior dismissal of the Class Action plaintiffs' claims relating to the Perpetual Care Trusts, and argued that Farno's ability to pursue such claims rendered a class action 'a demonstrably inferior method of prosecution in this case.'" Smith Barney's Br. at 17 n. 8 (quoting Smith Barney's App. at 70). According to Smith Barney, "Farno had an opportunity to respond to that argument in both [her] reply brief and during the lengthy oral argument before the trial court" but failed to do so and has therefore "waived this argument on appeal." *Id.* (citing, inter alia, *Baird v. ASA Collections*, 910 N.E.2d 780, 786 (Ind.Ct.App.2009) ("Generally, a party may not present an argument or issue to an appellate court unless the party raised that argument or issue to the trial court."), *trans. denied* (2010)). In her reply brief, Farno contends that Smith Barney's waiver claim is "wrong because [she] argued to the trial court that it was not permitted on class certification to look to the merits and that the class action was the only method to 'resolve the customers' claims against the De-

fendants.'" Appellant's Reply Br. at 4 n. 1 (citing Appellant's App. at 886, 1488). We note, however, that the pages cited by Farno do not mention the dismissal of the perpetual care claims in any way, shape, or form. Smith Barney's waiver claim is well taken, but we choose to address the merits of Farno's argument.

20. *See* Ind. Trial Rule 54(B) ("A judgment as to one or more but fewer than all of the claims or parties is final when the court in writing expressly determines that there is no just reason for delay, and in writing expressly directs entry of judgment, and an appeal may be taken upon this or other issues resolved by the judgment; but in other cases a judgment, decision or order as to less than all the claims and parties is not final."); Ind. Appellate Rule 14(B) ("An appeal may be taken from . . . interlocutory orders [other than those involving an interlocutory appeal as a matter of right or granting or denying class action certification] if the trial court certifies its order and the Court of Appeals accepts jurisdiction over the appeal.").

*con,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). In sum, the trial court did not err in making its ruling based on the factual and procedural posture of the case at that time.

Second, Farno argues that "the trial court also erred by relying on its merits determination that the other actions *could* resolve those claims." Appellant's Br. at 22. Specifically, she contends that "[t]he trial court's decision that the Receiver's Action provided a superior method to recover any of the missing trust funds necessarily (and incorrectly) assumed that the Receiver had standing to pursue such claims, and that [Farno] did not." *Id.* The only support that Farno offers for this assertion consists of comments made by counsel for Smith Barney and counsel for Deutsche Bank (which is not even a defendant in the Class Action) at hearings held *after* the trial court ruled on Farno's motion for class certification. The issue of standing is not mentioned anywhere in the trial court's ruling; if anything, the ruling assumes that both Farno and the Receiver would have standing to recover missing trust funds but ultimately concludes that Farno's Class Action would not be a superior method of doing so. We find no error on this point.

## II. Superiority Determination

Next, Farno asserts that

[t]he trial court should not even have considered the Receiver's Action or the Securities Commissioner's Action in its superiority analysis. No Indiana court has ever before held that actions brought by other parties are superior to a class action to adjudicate the controversy between class members and defendants, much less other actions relating to different claims, different damages, different defendants.

.... [C]ourts have considered only other methods by which the *class members* can assert their claims or in which the *class members'* claims can be adjudicated, such as joinder, intervention, consolidation, a test case, and an administrative proceeding. Courts have *not* considered actions by private third parties who are not class members to be potentially superior methods for resolving the class members' claims....

The trial court erred by even considering a sale or separate actions by non-class members as "superior" options to the Class Action because none of those options provides any method to adjudicate the controversy between the class members and the Defendants, as required by [Trial Rule] 23(B)(3).

Appellant's Br. at 23–25 (citations omitted).[21]

---

21. Smith Barney says that it specifically raised the Receiver's Action, the Securities Commissioner's Action, and the potential for a court-approved sale of the Cemeteries in arguing to the trial court that Farno could not demonstrate that she met Rule 23(B)(3)'s "superiority" requirement. (Smith Barney Appendix at 68–71). In response, Farno—despite having had an opportunity to do so in both [her] reply and at oral argument—never argued below that it would be improper for the trial court to consider those other proceedings in connection with its analysis of the "superiority" requirement. (*See* Appellant's Appendix at 1450–94). Accordingly, [Farno] has waived this argument.

Smith Barney's Br. at 24–25 n. 11 (citing, inter alia, *Baird,* 910 N.E.2d at 786). In her reply brief, Farno asserts that

an issue that is "inherent within the issue brought before the trial court . . . is properly before [the appellate court] on appeal." *Dedelow v. Pucalik,* 801 N.E.2d 178, 184 (Ind.Ct.App.2003); *Bielat v. Folta,* 141 Ind. App. 452, 229 N.E.2d 474, 475 (1967) (same). Farno argued to the trial court that the purported alternatives to the Class Action were not superior mechanisms for resolving the class's claims against the de-

■ Smith Barney correctly observes that there are "a number of" decisions outside Indiana holding that actions brought by third parties " 'are superior to a class action to adjudicate the controversy between class members and defendants' " and that Farno "has not pointed to any Indiana decision holding otherwise." Smith Barney's Br. at 26 (quoting Farno's Br. at 24). The leading decision is *Kamm v. California City Development Co.*, 509 F.2d 205 (9th Cir.1975), which involved the marketing and sale of investment real estate in the Mojave Desert. Fourteen named plaintiffs (representing an estimated 59,000 investors) filed a class action complaint in federal district court alleging violations of the Securities Exchange Act, the Interstate Land Sales Act, and the California Subdivided Lands Act, as well as fraud and breach of trust. The defendants moved to dismiss the class action on superiority grounds pursuant to Federal Rule of Civil Procedure 23(B)(b)(3), "based primarily on the fact that state action had already been commenced by the California Attorney General and Real Estate Commissioner with respect to the same controversy and relief had been obtained." *Id.* at 207. The district court granted the motion to dismiss, and the investors appealed.

The Ninth Circuit Court of Appeals addressed the superiority issue as follows:

> Appellants' primary contention is that the class action is in fact superior because the California state action (1) does not sufficiently represent and protect the interests of the entire class and (2) does not adjudicate the same controversy.

It is true that not all members of the class appellants seek to represent will be protected by the California settlement; nor will the class recover an amount that is even close to that sought in the class action. Except for those post–1970 purchasers who viewed a certain sales film, only those offerees and claimants who purchased lots or parcels between 1966–1970 are entitled to share in the estimated $3,300,000 in restitution offered by defendants. All other investors, including those purchasing before 1966 and after 1970, are limited to either seeking relief through the 'future dispute' program structured by Western Cities or instituting their own private actions. Appellants argue that because of the narrow scope of the state relief the proposed class action must be found to be superior to the settlement in the California state action.

The superiority requirement is unique to those class actions maintained under Rule 23(b)(3). With reference to Rule 23(b)(3), the [Federal Rules] Advisory Committee explained in its Note to Amended Rule 23, 39 F.R.D. 98, 102–103:

> "In the situations to which this subdivision ((b)(3)) relates, class-action treatment is not as clearly called for as in those described above, (i.e. (b)(1) and (b)(2)), but it may nevertheless be convenient and desirable depending upon the particular facts. Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrific-

---

fendants. Inherent within that argument is that it was error for the trial court to even consider those alternatives, and thus, Farno has not waived that argument.

Appellant's Reply Br. at 8–9 n. 4 (citation to appendix omitted). We are unpersuaded by Farno's assertion but nevertheless choose to address the merits of her argument.

ing procedural fairness or bringing about other undesirable results".

As the Advisory Committee noted, the court must "assess the advantages of alternative procedures for handling the total controversy". Many factors must be considered in determining whether a class action is superior to other available methods. As an aid for determining the superiority question, Rule 23(b)(3) lists four factors. . . . This is not, however, an exhaustive list. In the recent case of *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 760 (3 Cir.1974) the court noted that Rule 23(b)(3) superiority determinations must "take into account several different interests. The court said:

> "Superiority must be looked at from the point of view (1) of the judicial system, (2) of the potential class members, (3) of the present plaintiff, (4) of the attorneys for the litigants, (5) of the public at large and (6) of the defendant. The listing is not necessarily in order of importance of the respective interests. Superiority must also be looked at from the point of view of the issues."

In its order dismissing the class action and striking the class allegations, the district court did not make detailed findings of fact, but found generally that "a class action is not superior to other available methods for the fair and efficient adjudication of the controversy", especially in light of the proceedings already brought by the California officials in state court and "the relationship of these proceedings to the facts and posture of this particular case".

Although not expressly articulated by the district court, many factors support the court's determination: (1) A class action would require a substantial expenditure of judicial time which would largely duplicate and possibly to some extent negate the work on the state level. (2) The class action would involve 59,000 buyers in separate transactions over a 14 year period, with part of the buyers desiring to retain their land. (3) Significant relief had been realized in the state action through (a) restitution to many members of the class; (b) [one of the defendants'] agreement to establish a program to settle future disputes; (c) a permanent injunction; and (d) a letter of credit in the amount of approximately $5,000,000 to guarantee funds for off-site improvements. (4) The state court retained continuing jurisdiction. (5) No member of the class is barred from initiating a suit on his own behalf. (6) Although the class action aspects of the case have been dismissed, appellants' action is still viable. (7) Defending a class action would prove costly to the defendants and duplicate in part the work expended over a considerable period of time in the state action. These factors as a whole support the conclusion of the district court that the class action was not a superior method of resolving the controversy.

Finally, appellants contend that the district court erred in considering the California action as an alternative to the class action, arguing that the state action did not involve the same controversy, did not include five of the defendants named in this action, and did not provide the class-wide restitution sought in this case.

We cannot agree that these differences render the state action so different a controversy that it should not have been considered by the district court in determining whether the class action was superior to alternative methods. The state action was based on a charge of misleading advertising and deceptive sales practices. While appellants have

charged false registration under the Interstate Land Sales Act, a violation of the Securities Exchange Act of 1934, and false registration under the California Subdivided Land Act, both actions involve the same fraudulent conduct of the defendants and both seek to provide relief for those injured thereby.

Considering only those facts properly before the court, we conclude that the court did not abuse its discretion in dismissing the class action.

*Id.* at 211–13 (some alterations added) (footnotes omitted).

Appellees cite several other cases that reference *Kamm* in addressing the issue of superiority.[22] Farno insists that those cases "cannot be applied here because [the Receiver's Action and the Securities Commissioner's Action] do not seek recoveries on the class's statutory claims (which provide for, among other things, treble damages) and have left the trusts underfunded by over $15 million." Appellant's Reply Br. at 9.[23] Farno further asserts that those "cases are distinguishable because other factors existed that are not present here, such as meaningful regulatory relief, the existence of lawsuits by individual class members, or separate actions that provided the same relief as the class action." *Id.* at 10. Farno states that here, the Securi-

---

**22.** *See, e.g., Brown v. Blue Cross & Blue Shield,* 167 F.R.D. 40, 47 (E.D.Mich.1996) (denying motion for certification of class action seeking reimbursement of excessive co-insurance payments, where defendant insurer had entered into conditional settlement agreement with state insurance commissioner and attorney general) ("The Court recognizes that the State agreement may not be perfect or may not be how plaintiffs' counsel would have advocated a settlement in the present case; however, based on the uncertainty of litigation, especially in complex areas of the law, such as insurance and ERISA, and the complete repayment of subscribers' claims, the Court does not believe that a class action is necessary in light of the State agreement."); *Caro v. Procter & Gamble Co.,* 18 Cal.App.4th 644, 22 Cal.Rptr.2d 419, 428 (1993) (affirming denial of motion for certification of class action alleging misrepresentation against orange juice manufacturer, based in part on defendant's compliance with FDA consent decree regarding product labeling and settlement agreements with state attorney general and district attorneys) ("Here the State of California has obtained relief in other proceedings to correct various alleged false and misleading advertising and labeling practices by defendants. A class action would require substantial expenditure of judicial time effectively duplicating work which has been or could be done by the state. The FDA action has also resulted in significant relief including cessation of the assertedly deceptive conduct. Further, the fact Caro's lawsuit may assert different theories than those involved in the other federal and state proceedings does not preclude consideration of those other proceedings in determining whether to certify the class action here, since such actions involve the same or similar misconduct by defendants.").

**23.** Smith Barney "strongly disputes" Farno's assertion regarding the shortfall, characterizing it as "directly contrary to the representations made by the Receiver and the State regarding the impact of the sale of the Cemeteries on the Trusts." Smith Barney's Br. at 34. Smith Barney says that

[t]he source of [Farno's] purported calculation of the remaining shortfall is entirely unclear. [Farno] appears to be basing [her] speculation in that regard on an initial report provided by the Receiver in response to the trial court's order that the Receiver provide notice of "the amount she views as reasonably necessary to restore liquidity to the Ansure Trusts and to bring the Ansure Trusts into compliance with Indiana law." [H]owever, the Receiver subsequently agreed that a much lower amount was required and that the funds being contributed to the Trusts by StoneMor exceeded that amount.

*Id.* (citations to appendix omitted). We need not resolve this dispute here but merely mention it as one example of the many complicated factual issues that the trial court faced in exercising its discretion with respect to Farno's motion for class certification.

ties Commissioner "brought only one claim for securities fraud, while the Class Action brings claims under the Pre–Need Act, RICO, the Crime Victims Relief Act, and the common law, and the relief sought in the Securities Commissioner's Action does not match the relief sought in the Class Action," that is, treble damages and attorney's fees. *Id.* at 11.[24]

We note, however, that Farno cites no authority for her apparent premise that a class action "is superior to other available methods for the fair and efficient adjudication of the controversy" unless those other methods will obtain (or have already obtained) identical relief via identical claims against identical defendants.[25] In any event, as the trial court noted in its ruling, Farno and the Receiver brought similar claims against many of the same defendants. Likewise, Farno cites no authority for her suggestion that a trial court may not consider factors other than the four specifically listed in Trial Rule 23(B)(3) when deciding the question of superiority. Indeed, we have stated that "[t]his list is not ... intended to be exhaustive. The court may consider other factors relevant to the particular litigation, such as the underlying purpose of [Trial Rule] 23(B)(3)." *Am. Cyanamid Co. v. Stephen,* 623 N.E.2d 1065, 1072 (Ind.Ct.App.1993). As for Farno's contention that the trial court erred in even considering non-judicial methods, such as the pending sale of the cemeteries, in addressing the issue of superiority, we note that "the court need not confine itself to other available 'judicial' methods of handling the controversy in deciding the superiority of the class action.'" 7AA CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, AND RICHARD L. MARCUS, FEDERAL PRACTICE & PROCEDURE § 1779 (3d ed.2011) (citing *Berley v. Dreyfus & Co.,* 43 F.R.D. 397 (S.D.N.Y. 1967)).[26]

Farno's stated purpose for requesting class certification was to "resolv[e] the customers' claims to restore the pre-need trust funds and to ensure that customers' pre-paid burial services and merchandise will be provided when they pass away." Appellant's App. at 885. However, the Securities Commissioner's Action, the Receiver's Action, and the pending sale of the cemeteries were all geared toward restoring both the pre-need trust funds *and* the perpetual care trust funds, which would in turn ensure both that the customers' pre-paid burial services and merchandise will be provided when they pass away *and* that their burial sites will be cared for in perpetuity. As such, these alternative methods were clearly better suited for "handling

---

24. With respect to Farno's contention regarding attorney's fees, which are authorized for claims brought pursuant to the Crime Victims Relief Act, we note that "[o]ther courts have found that the existence of fee shifting statutes weighs against a finding of superiority in proposed class action suits," in that "the financial barrier to bringing suit is eliminated." *Abby v. City of Detroit,* 218 F.R.D. 544, 549 (E.D.Mich.2003) (citing *Zapata v. IBP, Inc.,* 167 F.R.D. 147, 163 (D.Kan.1996)).

25. Forethought points out that "[b]y this logic, any class plaintiff could demonstrate superiority simply by seeking relief or naming defendants beyond the relief sought or the defendants named in other actions." Forethought's Br. at 13.

26. *See Berley,* 43 F.R.D. at 398–99 ("Although Dreyfus & Co.'s offer to refund the purchase price to its customers is not quite 'another method for the fair and efficient *adjudication* of the *controversy,*' we think that subparagraph (b)(3) read as a whole reflects a broad policy of economy in the use of society's difference-settling machinery. One method of achieving such economy is to avoid creating lawsuits where none previously existed.... If a class of interested litigants is not already in existence the court should not go out of its way to create one without good reason.").

the total controversy," in the words of the Federal Rules Advisory Committee.

Farno raises numerous arguments in an attempt to show that the Class Action is superior to each alternative method individually. We believe that the trial court properly took a more global approach in considering the "other available methods" collectively. The only argument advanced by Farno that has some persuasive force is her assertion that neither the Receiver nor the Securities Commissioner could bring a claim under the Deceptive Consumer Sales Act as alleged in Count I of her complaint. According to Farno, such a claim would be personal to the cemetery customers. At oral argument, Farno's counsel posited that each customer would be entitled to at least $500 for a successful claim and that the customer class would number around 10,000, for a total recovery of approximately $5,000,000. Nonetheless, Count I of Farno's complaint is only one facet of the total controversy, which involves numerous claims and tens of millions of dollars. Moreover, any money recovered by the customers would not be used to replenish the trusts, which is the stated purpose of the Class Action.[27]

Based on the foregoing, we conclude that the trial court did not abuse its discretion in denying Farno's motion for class certification on superiority grounds. In so concluding, however, we recognize that subsequent events have altered the playing field in significant ways that may affect the calculus regarding whether a class action would be a superior method of resolving the remaining claims against the remaining defendants. Trial Rule 23(C)(1) specifically provides that a certification order "may be altered or amended before the decision on the merits," and at oral argument both sides agreed that the trial court's certification ruling would have no preclusive effect on the issue of class certification. *Cf. Gardner v. First Am. Title Ins. Co.*, 218 F.R.D. 216, 217 (D.Minn. 2003) ("The district court is ... charged with the duty of monitoring its class decisions in light of the evidentiary development of the case. This is an exception to the law of the case doctrine, which holds that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case.") (emphasis, citations, and quotation marks omitted). As such, nothing would prohibit Farno from filing another motion for class certification or the trial court from revisiting its ruling in light of recent developments. Having made these observations, we affirm the trial court in all respects.

Affirmed.

ROBB, C.J., and NAJAM, J., concur.

---

27. We note that the nature, extent, and existence of damages to which the customers would be entitled under the Deceptive Consumer Sales Act are vigorously disputed by the parties. We need not resolve these disputes and leave them for the trial court's consideration in the event Farno files another motion for class certification.